Staff, J.
This is a civil action in which the Division of Employment Security *132 (hereinafter the division) seeks to be reimbursed by the Town of Mattapoisett (hereinafter the town) for unemployment compensation payments made to a terminated teacher.
The case was submitted to the District Court upon an “agreed statement of facts” amounting to a case stated, so that we need not consider the requests for rulings as the only question before us is whether the decision was right on the facts stated and proper inferences therefrom. Rock v. Pittsfield, 316 Mass. 348, 349 (1944).
The question raised by the appeal is whether a school committee’s discharge of a teacher under G. L. c. 71, §42 “for good cause and because of her incapacity and/or conduct unbecoming a teacher, and/or insubordination” requires.a determination under G.L. c. 151 A, §25 (e) (2) by the Director of the Division of Employment Security that such discharge was “attributable solely to deliberate misconduct in wilful disregard of the employing unit’s interest” so as to disqualify the teacher from receiving benefits under the Unemployment Compensation Act. The trial court answered this question in the negative and we affirm.
The issue arises in the following factual context.
After having made findings that a tenured teacher had disrupted classes, used derogatory language in front of students, assaulted another teacher and a student, was argumentative and made statements to the administration, the town acting through its school committee terminated her employment.[1]
Later the discharged teacher applied for and received unemployment compensation benefits. Implicit in the award of unemployment compensation is a finding by the director that the employee’s discharge was not attributable solely to deliberate misconduct in wilful disregard of the interest of the town.
The division then sought to be reimbursed for its payment of benefits from the town under the provisions of G.L. c. 151 A, §14A which provides that a governmental unit may, in lieu of paying contributions under G.L. c. 151 A, elect to repay the actual benefits paid by the division.
As the trial judge aptly points out, it is a well-settled rule of statutory interpretation and construction that statutes which do not necessarily conflict should be construed to have consistent directives so that both may be given effect. County Comr’s of Middlesex v. Superior Court, 371 Mass. 456, 460 (1976). Additionally, where two or more statutes relate to the same subject matter they should be construed together so as to constitute a harmonious whole consistent with the broader legislative purpose. Hardman v. Collector of Taxes of No. Adams, 317 Mass. 439, 442 (1945). On the one hand, G.L. c. 71 pertains to the management and maintenance of local school systems within the Commonwealth. The Legislative prerogative is to allow the local school boards, as part of their duties, to hire and dismiss teachers. Similarly, G.L. c. 151 A indicates a clear legislative intent to allow the director to administer the provisions of c. 151 A.
The reasons permitting the discharge of a tenured teacher, i.e. inefficiency, incapacity, conduct unbecoming a teacher, or other good cause, clearly are not co-equal to deliberate misconduct in wilful disregard of the employing units interest.
The doctrine of res judicata, collateral estoppel, or issue preclusion do not pertain.
Finding no error, we order the report dismissed.
*133 Silva, J. (Dissenting) In arriving at the decision to affirm the finding of the trialjustice, my colleagues interpret the language contained in G.L. c. 151 A, §25 (e) (2), namely, “by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit’s interest”, to mean that the director is all powerful and beyond the scope of judicial review. G.L. c. 151 A, §42 provides for judicial review of decisions of the board of review. While it might, with merit, be argued that this proceeding does not seek to review the action of the board of review, §42 makes the director a party to any proceeding before the board, and he is the respondent in all such cases. As the plaintiff in this action, the director is asking the Court to review his action and affirm his decision that benefits were due and payable and to order the town to reimburse the division for payments he ordered and approved. This action is in the nature of judicial review and as such is subject to G.L. c. 30A, §14. By virture of G.L. c. 30A, §14 (2): “(T)he Court may affirm the decision of the agency,. . . .or. . . . set aside or modify the decision. . . . if it determines that the substantial rights of any party may have been prejudicial because the agency decision is .... (e) unsupported by substantial evidence; .... or (g) arbitrary or capricious, an abuse of discretion or otherwise not in accordance with law.”
Of course, as my colleagues will be quick to point out, G.L. c. 30A relates to judicial review of decisions of administrative agencies and not to matters within the courts original jurisdiction. However,the Town of Mattapoisett affirmatively pleaded in its answer that the Director of the Division of Employment Security acted illegally in paying compensation, and for that purpose it becomes necessary to review the action of the director.
Pursuant to G.L. c. 71, §42, a school committee has the power to dismiss a teacher for “inefficiency, incapacity, conduct unbecoming a teacher .... insubordination or other good cause.” This power of the school committee to discharge is to be broadly construed. Davis v. School Committee of Somerville, 307 Mass. 354, 362 (1940). The terms utilized by the statute - “conduct unbecoming a teacher, insubordination, good cause” - are by nature very broad, and have been interpreted to include any grounds for dismissal as long as the decision to terminate employment is not arbitrary, irrational, unreasonable or irrelevant to the School Committee’s purpose of building up and maintaining an efficient school system. Faxon v. School Committee of Boston, 331 Mass. 531, 534 (1954).
The language of the Employment Security Act denies benefits to claimants who are discharged for “deliberate misconduct in wilful disregard”. By the use of the word; “deliberate”, the idea is conveyed that the perpetrator weighs the motives for the act and its consequences, with a view toward decision thereon; that he carefully consider all of these; and that the act is not suddenly committed. It is pondered, carefully considered, and well advised, and when the act is performed, it is wilful rather than merely intentional. In re Nunns, 176 N.Y.S. 858, 866.
Insubordination by a servant imports a wilful disregard of express or implied directions of the employer and refusal to obey reasonable orders. McIntosh v. Abbot, 231 Mass. 180, 183.
Misconduct is a transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior, wilful in character, improper or wrong behavior. Mandella v. Mariano, 61 R.I. 163, 166 (1938).
In general, deliberate misconduct occurs when the employee forces his own discharge. 76AM. JUR. 2d UNEMPLOYMENT COMPENSATION §52. The terms "wilful” and “deliberate" suggest purposeful action or inaction. Garfield v. *134 Director Division of Employment Security 377 Mass. 94, 97 (1979). Misconduct within the meaning of the Act includes activity which shows wanton or wilful disregard of the employer’s interest; a deliberate violation of the employer’s rules; a disregard of the standards of behavior which the employer has the right to expect of his employee; or negligence in such a degree or recurrence as to manifest culpability, wrongful intent, evil design or an intentional and substantial disregard of the employer’s interest or of the employee’s duty and obligation to the employer. 76 AM. JUR. 2d §52. Insubordination, meaning wilful, deliberate, purposeful refusal to follow the reasonable directions or instructions of the employer can be considered “deliberate misconduct in wilful disregard” so as to preclude unemployment benefits. 76 AM. JUR. 2d §55.
In my view, the facts of this case satisfy the narrow test used by the director to deny benefits to claimants. While it is not necessary for a school committee to meet the “deliberate misconduct in wilful disregard” standard in order to terminate a tenured teacher’s employment under G.L.c. 71, §42, a clear, sound basis exists for finding that the Director’s statutory standards were met based upon the facts as found by the Appeals Court in Springgate v. School Committee of Mattapoisett, 1981 Mass. App. Ct. 257. Ms. Springgate disrupted classes in an impermissible fashion; on a field trip she threw money at another teacher, whom she had pushed and elbowed on the bus; was verbally abusive to her peers; was argumentative and overbearing with the librarian and an aide in the presence of students; and she lied to administrators. All of this conduct spanned a period of ten months and persisted despite formal and informal hearings. It is not unreasonable to conclude that such conduct on the part of the teacher coupled with her refusal to alter her conduct after being repeatedly warned amounted to ‘ deliberate misconduct in wilful disregard of the employing unit’s interest.”
The plaintiff argues that a critical issue in determining disqualification under Section 25 (e) (2) is the claimant’s state of mind. Garfield v. Director of Division of Employment Security (1979) supra; Smith v. Director of the Division of Employment Security, 376 Mass. 563, 566 (1978); Goodridge v. Director of the Division of Employment Security, 375 Mass. 434, 437 (1978). While the employee’s knowledge of the employer’s expectations are to be considered, the reasonableness of the employer’s expectations must also be considered. School Committees can be said to be acting reasonably when they demand that teachers within the system conduct themselves in a professional manner. If Ms. Springgate had any question as to the propriety of her conduct, these questions were dispelled by the subsequent warnings of her employer. Failure to heed the warnings amounted to deliberate misconduct in wilful disregard of the employing unit’s interest.
By virtue of G.L.c. 23, §91, the Director of the Division of Employment Security is given the power to administer the provisions of c. 151 A. By virtue of §25 (e) (2) of c. 151A the director is authorized to deny benefits to a claimant if the employment was terminated by “discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit’s interest.” The conduct of the teacher in this case as disclosed by the facts set forth in Springgate v. School Committee of Mattapoisett, supra, was sufficient to establish, even to the director’s “satisfaction”, conduct equalling “deliberate misconduct in wilful disregard”. By choosing to ignore these findings and disregarding the disqualification standards set out in the statute, the Director of the Division of Employment Security abused his discretion. While this section of the Employment Security Act authorizes specific circumstances whereby the Director can deny benefits, it also limits the scope of the Director’s discretion to find that no disqualification for benefit eligibility *135 exists. G.L. 151A, §25 (e) must be read in its entirety.[2]
In the second paragraph of this section, the legislature in its wisdom seems to prescribe three specific instances whereby the Director must find ‘ ‘no disqualification” and order benefits paid. If the claimant fits into one of these three categories she will receive benefits. However, not only do the facts disclose a disqualification for benefits under the deliberate misconduct in wilful disregard test, this claimant does not come within one of the narrowly defined basis for qualification of benefits. Therefore, there is no plausible justification for awarding benefits to the claimant, and, by so doing, the Director abused his discretion. Since the Director acted in error, the court is not usurping the Director’s power to administer the provisions of the act by denying the Division of Employment Security reimbursement for benefits erroneously paid. While the Director has the authority to grant or withhold benefits he does not operate in a vacuum. When he acts arbitrarily, or abuses his discretion in determining what conduct falls within the statutory language of deliberate misconduct in wilful disregard, the court has a duty to correct the error and set aside the award.
The conclusion of wilful misconduct must rest on specific acts or omissions of the employee which adversely affect the employer’s interest. Garfield v. Director of the Division of Employment Security, supra. In order to make such factual findings, the Division of Employment Security, as an administrative agency must make findings on each factual issue essential to its decision. Reavey v. Director of the Division of Employment Security, 377 Mass. 913, 914. In order to discharge this duty it would be necessary to consider all the facts of this case.
Based on the specific acts of misconduct as set forth in Springgate v. The School Committee of Mattapoisett, I find it very difficult to reconcile the Director’s actions. While the statute provides the Director with authority to determine deliberate misconduct in wilful disregard, if he abuses his discretion and erroneously pays the benefits, the employer, who has already received a judicial determination that the firing of the employee was for just cause, should not be compelled to pay for the Director’s mistake. The Director is not a Czar and his determination as to whether or not §25 (e) (2) was complied with is subject to judicial review to determine whether he exceeded his authority. Even the President of the United States is not above the law. United States v. Nixon 418 U.S. 683.
The general rule of statutory construction is that statutes which do not conflict and which relate to the same subject matter should be “considered as a whole, and, if possible, be so construed as to make them effectual pieces of legislation in harmony with common sense and sound reason.” Hardman v. Collector of Taxes *136 of North Adams, 317 Mass. 439 (1945); County Commissioner of Middlesex County v. Superior Court, 371 Mass. 456 (1976). Here the statute relating to the scope of the School Committee’s power and the power of the Division of Employment Security do not conflict and relate to the same subject matter, namely, employment termination. M.G.L.A.c. 151A, §25C; c.23, §91; c.71, §§42, 43A. In considering these statutes, they should not be interpreted in such a manner as to violate the underlying purpose thereof.
Whether the dismissed teacher was fired for good cause or conduct unbecoming a teacher or insubordination or deliberate misconduct in wilful disregard, the employment relationship was terminated for sound reasons. The Director of the Division of Employment Security does not dispute the basis of the School committee’s decision to terminate, but the Director does deny that the standards of c. 151 A, §25 (e) (2) were satisfied. As discussed previously, I find this decision erroneous based upon the facts as judicially determined.
The real issue in such cases is not whether the employer was justified in discharging the employee, but rather whether the legislature intended that benefits should be denied in these circumstances. It is therefore necessary to look at the underlying purpose of the act. Briefly the purpose of the act is to provide benefits to alleviate harmful consequences to workmen resulting from times of business depression. Pierce’s Case, 325 Mass. 649, 656. The act also seeks to provide benefits to claimants who are out of work through no fault of their own, Cusack v. Director of Division of Employment Security, 376 Mass. 96, 98; or who are compelled to leave work through no fault of their own, Garfield v. Director of Divison of Employment Security, supra.
“The legislative intent is not to provide benefits to a claimant who has brought about his own unemployment through intentional disregard of standards of behavior which his employer has a right to expect.” Johnson v. Director of Division of Employment Security, 377 Mass. 229, 230. Indeed the purpose of this statute is to deny benefits to claimants who are unemployed because of callousness, deliberate or wanton misbehavior, or lack of consideration. 76 AM. JUR. 2d §52. In the Johnson case, supra, the Supreme Judicial Court upheld the Division of Employment Security Board of Review decision denying benefits. The employer fired a floor worker who had been late to work three times during a thirty day probationary work period. The court upheld the decision that such tardiness, after having been warned that it would not be tolerated, constituted “deliberate misconduct” within the meaning of §25 (e) (2). The decision rested on the fact that the underlying policy of the act is to deny benefits to individuals who have shown intentional disregard of standards of behavior which his employer has a right to expect. In the instant case, providing unemployment benefits to Ms. Springgate, in the light of her conduct which subsequently led to her dismissal, flies in the face of the policy of the act as articulated by the Supreme Judicial Court in the Johnson case. It is also difficult to determine why the Director found three instance of tardiness as amounting to deliberate misconduct in wilful disregard, yet held that Ms. Springgate’s conduct does not satisfy the disqualification provision in this statute. If the Director of the Division of Employment Security is allowed absolute discretion, in the light of the facts disclosed here, to pay benefits and then to secure reimbursement, the legislative intent to provide benefits only to claimants who did not cause their own unemployment is going to be thwarted. Furthermore, the Director erred in providing benefits and it is fundamentally unfair to now require the Town of Mattapoisett to pay the penalty for his mistake.
Based upon the facts of this case, the dismissed employee was not entitled to *137 unemployment compensation benefits because her claim was barred by the deliberate misconduct in wilful disregard provisions of the act. However, I do not want to leave the impression that the teacher was unable to question the School Committee’s decision to terminate her employment. The School Committee’s power over the employment and discharge of teachers is paramount, and is subject only to such restrictions as the legislature has imposed on the general grant of power to the committee, Lower v. North Middlesex Regional School Committee 8 Mass. App. Ct. 536, 539 (1979). The legislature has provided for a restriction on the scope of the School Committee’s power by enacting c. 71, §43A. Under that section, a dismissed teacher can appeal a decision of the School Committee to the Superior Court which has the obligation to determine whether the charge on which her employment was terminated was substantiated. In a Superior Court review of the action of the School Committee, the Court’s function is not to determine whether the action was appropriate or wise. If a ground for dismissal is established, the Court is bound to affirm the decision of the School Committee. The Lower decision reflects the Court’s strong position that unless the School Committee abused its discretion their decision will stand. Therefore the primary responsibility for determining the grounds' for employment termination rests with the School Committee, and the Court’s function is to act as a check on the abuse of the discretion granted by legislative enactment. Examples of an abuse of the School Committee’s discretion would be dismissing a teacher for bias, political pressure or other improper motive. Springgate v. School Committee of Mattapoisett supra. Such finding of bias, political pressure, etc. would probably also justify a finding of no disqualification of benefits on the Employment Security Act.
By terminating Ms. Springgate’s employment relationship, the School Committee did not expect the town would be required to contribute to the Division of Employment Security because of the basis for the teacher’s dismissal. While the Director of the Division of Employment Security has the authority to determine misconduct in wilful disregard, he cannot abuse his discretion especially in a case such as this.
Whenever a statute provides for a subjective standard, abuse of discretion is a foreseeable occurrence, which can only be addressed by judicial review. The Administrative Procedures Act, G.L. c.38, §10, allows persons who feel that they may be substantially and specially affected by a departmental proceeding to intervene. An administrative agency has broad discretion as to whether or not to allow interveners but that discretion is not unlimited. Boston Edison v. The Department of Public Utilities, 375 Mass. 1, cert. denied 439 U.S. 921. While this case involved a different state administrative agency, namely the Public Utilities Commission, the Court recognized that a legislative grant of discretion in administrative decision making is not equivalent to an unlimited, unrestrained grant power.
The agency’s decision will not be disturbed unless unsupported by substantial evidence, Garfield v. Director of Division of Employment Security, supra; Goodridge v. Director of Division of Employment Security, 375 Mass. 434; (1978); Lewis v. Director of Division of Employment Security, 379 Mass. 918.
“Supported by substantial evidence” means evidence such as the reasonable mind might accept as adequate to support a conclusion.” Sinclair v. Director of Employment Security, 331 Mass. 101, 102 (1954).
I would reverse.

 G.L.c. 71, §42 provides that a tenured teacher may be discharged for cause for the following reasons only: ‘'inefficiency, incapacity, conduct unbecoming a teacher..., insubordination or other good cause..."

EMPLOYMENT SECURITY, c. 151A, §25:
"(e) For the period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work. (1) voluntarily without good-cause attributable to the employing unit or its agent (2) by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit’s interest or (3) because of conviction of a felony or misdemeanor.
"No disqualification shall be imposed if such individual establishes to the satisfaction of the director that he left his employment in good faith to accept new employment on a permanent full-time basis, and that he became separated from such new employment for good cause attributable to the new employing unit. An individual shall not be disqualified under the provisions of this subsection from receiving benefits by reason of leaving his work under the terms of a pension or retirement program requiring retirement from the employment notwithstanding his prior assent, direct or indirect, to the establishment of such program. An individual shall not be disqualified from receiving benefits under the provisions of this subsection, if such individual establishes to the satisfaction of the director that his reasons for leaving were for such an urgent, compelling and necessitous nature as to make his separation involuntary."